## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND, SOUTHERN DIVISION

| | | |
|---|---|---|
| Dati Katam Arma | * | |
| c/o Crowell and Moring | | |
| 1001 Pennsylvania Avenue, NW | * | |
| Washington, DC 20004-2595 | | |
| (Montgomery County) | * | |
| | | Civil Case No. _____ |
| Plaintiff, | * | |
| | * | |
| Landung Prakoso | * | |
| 529 Beacon Hill Terrace | | |
| Gaithersburg, MD 20878 | * | |
| (Montgomery County) | | |
| | * | |
| Lanny Gunawan | * | |
| 529 Beacon Hill Terrace | | |
| Gaithersburg, MD 20878 | * | |
| (Montgomery County) | | |
| | * | |
| Defendants. | * | |

---

## **COMPLAINT**

Plaintiff brings this civil action against Defendants for unpaid minimum wages, unpaid overtime compensation, fraud, breach of contract, unjust enrichment, involuntary servitude, and human trafficking.  Plaintiff seeks actual, compensatory, statutory, liquidated, and punitive damages, attorneys' fees and costs, and other appropriate relief, pursuant to the Fair Labor Standards Act of 1938 as amended, 29 U.S.C. § 201 *et. seq.* (*hereinafter* "FLSA"), the Maryland Wage Payment and Collection Law, MD. CODE ANN., LAB. & EMP. §§ 3-501 – 3-507.1 (1991

and 1998 Supp.) (*hereinafter* "Maryland Wage Payment Law"), the Maryland Wage and Hour

Law, MD. CODE ANN., LAB. & EMP., § 3-401 *et seq.* (1991 and 1998 Supp.) (*hereinafter*

"Maryland Wage and Hour"), and the Trafficking Victims Protection Act, 18 U.S.C. § 1581 *et.*

*seq.* (*hereinafter* "TVPA").

## PARTIES

1. Plaintiff Dati Katam Arma (hereinafter "Plaintiff") is an Indonesian immigrant who was lawfully brought to the United States by her former employer. She has a sixth-grade education and speaks very limited English. She is currently a resident of the State of Maryland.

2. Upon information and belief, Defendant Landung Prakoso ("Defendant Prakoso") resides in Bethesda, Maryland.

3. Upon information and belief, Defendant Lanny Gunawan ("Defendant Gunawan") resides in Bethesda, Maryland. Defendant Gunawan is married to Defendant Prakoso.

4. Defendants Prakoso and Gunawan (hereinafter referred to collectively as "Defendants") employed Plaintiff as a domestic servant in their home from early October 2005 to mid-October 2012.

## Jurisdiction and Venue

5. This Court has jurisdiction pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337 because this action arises under the laws of the United States and the Acts of Congress regulating commerce.

6. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's state law claims because those claims arise from a common set of operative facts and are

so related to the claims in the action within the original jurisdiction of the Court that they form part of the same case or controversy.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants reside in Montgomery County, Maryland and a substantial part of the wrongful conduct committed by Defendants, which forms the basis of this action, took place within this judicial district.

<u>Factual Allegations</u>

8. In approximately August 2005, Plaintiff sought refuge from the Indonesian Embassy in Washington, D.C., after escaping severe sexual harassment from her former employer. Plaintiff was brought to the United States on a B1-Visa by her former employer, a Saudi national, who was traveling in the United States on business. Once in the United States, her former employer "sold" her to a Saudi Arabian diplomat living in Northern Virginia. There she was forced to work as a domestic servant and subjected to severe sexual harassment.

9. After escaping her abusive employment situation, Plaintiff went to Indonesian Embassy to seek assistance in obtaining the return of her belongings and owed wages from her former employer so she could purchase a plane ticket home to Indonesia.

10. Plaintiff, being in a foreign country, unable to speak English, and without money, was very vulnerable and believed that the only place she could receive assistance was through the Indonesian Embassy. At the Indonesian Embassy, Plaintiff met Defendant Prakoso, an employee in the Indonesian Embassy's Consular, Visa and Passport Division.

11. Defendant Prakoso told Plaintiff that he would assist her in obtaining her belongings and owed wages; he was in a position of power and Plaintiff trusted him when he said that he was going to help her.

12. Defendant Prakoso advised Plaintiff that the process of seeking redress from her former employer would be difficult and take a long time.  He offered to take Plaintiff "under his family's care" while her problems were sorted out, and Plaintiff agreed.

13. Initially, Defendant Prakoso took Plaintiff to his brother-in-law's (Johan Gunawan) home located in Maryland.  For two months, Plaintiff stayed at Mr. Gunawan's home where she was expected to clean the home and care for Mr. Gunawan's children.

14. In approximately October 2005, Defendant Prakoso took Plaintiff to his home in Gaithersburg, Maryland and soon thereafter offered Plaintiff employment as a domestic servant in his home.

15. While Plaintiff wished to return to Indonesia, she couldn't speak English, was in a foreign country, and lacked the money necessary to travel to Indonesia.  Defendants promised Plaintiff that if she worked for them as a domestic servant for two years then they would purchase her a plane ticket to Indonesia.

16. Isolated and with few other viable choices, Plaintiff reluctantly accepted Defendants' offer and began working at their home in Gaithersburg, Maryland as a domestic servant beginning in October 2005.

17. Defendants also required Plaintiff to lie about her immigration status.  They instructed Plaintiff, on several occasions, to tell people outside the family that Defendants' sponsored her United States visa to work for their family as a domestic worker.

4

18. As an employee within the Indonesian Embassy's Consular, Visa and Passport Division, Defendant Prakoso knew or should have known the requirements for obtaining visas for aliens to work in the United States, including the requirement that employers pay immigrant workers the wages required under the applicable United States law.

19. As an immigrant who doesn't speak English, Plaintiff had no ability to become apprised of her rights of employment. At the start of employment, Defendants did not discuss the terms of employment or provide her with a written employment contract, specifying the terms of her employment, informing her of her rights, and guaranteeing that she would be paid the minimum wage and overtime, as required by Montgomery County Code, § 11-4B, *et seq*.

20. From October 2005 through September 2010, Plaintiff worked at least 11 hours per day (from 7:30 a.m. to 8:30 p.m.), seven days a week, as a cook, housekeeper and nanny for Defendants' children. During this period she worked at least 77 hours a week.

21. During the October 2005 to September 2010 period, Plaintiff was required to clean the entire house (which included washing the floors by hand two times a week), cook meals for Defendants' family and friends, and care for the Defendant's young children.

22. Plaintiff often worked in excess of 11 hours a day during the period from October 2005 to September 2010 because Defendants often required Plaintiff to sleep on the nursery floor, between the children's cribs, as part of caring for Defendants' children when they were young.

23. From October 2010 through October 2012, Plaintiff worked at least 11 hours per day, (from 7:30 a.m. to 8:30 p.m.), Monday through Friday (and frequent weekends), as a

cook, housekeeper and nanny for Defendants' children.  During this period she worked at least 60 hours a week.

24. During the October 2010 to October 2012 period, Plaintiff was required to clean the entire house (which included washing the floors by hand two times a week), cook meals for Defendants' family and friends, and care for Defendants' school-aged children. Every day, Plaintiff was required to make breakfast for Defendants' children, get the children ready for school, pack the children lunches, drop the children off at the bus stop, pick the children up at the bus stop, make the children an afternoon snack, make the children dinner, and put the children to bed.  In short, Plaintiff was responsible for taking care of all childcare-related responsibilities, in addition to cooking and cleaning until Defendants returned home from work, which on most nights was after 9:00 p.m.

25. Defendants took advantage of Plaintiff, paying her significantly below the minimum wage required by both federal and state law throughout her employment.   Defendants paid Plaintiff only $350 *a month,* starting in 2005.  Her rate of pay increased annually by $50 per month each year after October 2007, such that she was paid $550 and $600 *per month* starting in October 2010 and October 2011, respectively.  Based on those monthly totals, Defendants paid Plaintiff less than $2.70 per hour during the entire period she worked for Defendants.

26. The applicable minimum wage for Plaintiff's work under federal law was $5.15 per hour for 2005 through July 23, 2007; increased to $5.85 for July 24, 2007 through July 23, 2008; increased to $6.55 for July 24, 2008 through July 23, 2009; and increased to $7.25 for July 24, 2009 through 2012.

27. The applicable minimum wage in Maryland was $5.15 per hour in 2005 and 2006, increased to $6.15 in 2007, increased to $6.55 in 2008, and increased to $7.25 for 2009 through 2012.

28. Defendants failed to pay Plaintiff one-and-a-half times the required rate of pay for any time Plaintiff worked in excess of 40 hours in a workweek.

29. Defendants failed to pay Plaintiff every two weeks; instead Defendants paid Plaintiff only once per month.

30. Defendants failed to provide Plaintiff with a written record of her pay, the hours worked, or any deductions that Defendants may have made to her pay.

31. Defendants' failure to pay Plaintiff the required minimum wage and their failure to provide required overtime pay  was intentional and willful and not the result of a bona fide dispute.

32. Throughout employment, Defendants acted unlawfully in preventing Plaintiff from having any meaningful contact with the outside world.  Defendants abused their position of power by preventing Plaintiff from meeting and speaking with individuals outside of their family.  She was watched by Defendants at all times at social gatherings and when around other families.

33. During Plaintiff's employment, Defendants took control of her passport and obstructed her attempts to renew her passport.  Defendants were in control of her passport from 2005 until approximately 2011.

34. Defendants also prevented Plaintiff from obtaining a bank account and held Plaintiff's money for "safekeeping."

35. As a further means of keeping her captive, Defendants threatened and intimidated Plaintiff, telling her that she would be arrested or shot if she ever attempted to leave Defendants' home.  Having had no meaningful contact with the outside world and unable to communicate with law enforcement officials, Plaintiff reasonably believed Defendants' threats.

36. Defendants' mistreatment of Plaintiff was willful and was for the purpose of keeping her in a state of subservience that allowed Defendants to continue to reap the benefits of Plaintiff's forced, undercompensated labor.

37. Any and all applicable statute of limitations should be equitably tolled because Defendants knew or should have known that they were not adequately compensating Plaintiff, as required by applicable law, for the work she performed, and Defendants actively prevented Plaintiff from discovering her legal rights.  In addition, as an uneducated alien, who spoke very little English, and had no family or friends living in the United States, Plaintiff could not reasonably known of her legal rights during the period that she worked for Defendants, and Plaintiff acted with reasonable diligence in pursuing her legal rights once they became known to her.

## FIRST CLAIM FOR RELIEF
### (Unpaid Federal Minimum Wage under the Fair Labor Standards Act)

38. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 37 herein.

39. Defendants employed Plaintiff within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.§ 203(d), (e), and (g).

40. Upon information and belief, Defendants failed to keep hour and wage records as required by federal law.

41. Defendants failed to pay Plaintiff the statutory minimum for all hours worked in violation of 29 U.S.C. §§ 206(a) and (f) and regulations of the United States Department of Labor.

42. Defendants' failure to pay Plaintiff the required statutory minimum wage was willful within the meaning of 29 U.S.C. § 255(a).

43. Defendants' willful violation of the FLSA entitled Plaintiff to recovery of her unpaid minimum wages, liquidated damages, and an award of reasonable attorneys' fees and cost pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
**(Unpaid  Minimum Wage under the Maryland Wage and Hour Law)**

44. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 43 herein.

45. Defendants employed Plaintiff within the meaning of the Maryland Wage and Hour Law, MD. CODE ANN., LAB. & EMP., § 3-501.

46. Upon information and belief, Defendants failed to keep hour and wage records as required by Section 3-424 of the Maryland Wage and Hour Law.

47. Defendants violated Section 3-413 of the Maryland Wage and Hour Law by failing to pay Plaintiff the minimum wage for every hour worked.

48. Defendants' failure to pay Plaintiff the minimum wage as required by Section the 3-413 of the Maryland Wage and Hour Law entitles Plaintiff to recover her unpaid minimum wages, liquidated damages, and an award of reasonable attorney's fees and cost pursuant to Section 3-424 of the Maryland Wage and Hour Law.

## THIRD CLAIM FOR RELIEF
**(Failure to Pay Overtime under the Maryland Wage and Hour Law)**

49. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1

    through 48 herein.

50. Defendants employed Plaintiff within the meaning of the Maryland Wage and Hour Law,

    MD. CODE ANN., LAB. & EMP., § 3-501.

51. Defendants violated Section 3-415 of the Maryland Wage and Hour Law by failing to pay

    Plaintiff at least 1.5 times the required minimum wage for all hours worked in excess of

    40 hours per week, computed under Section 3-420 of the Maryland Wage and Hour Law.

52. Defendants' failure to pay Plaintiff at a rate of 1.5 times the required the minimum wage

    as required by Section 3-415 of the Maryland Wage and Hour entitles Plaintiff to recover

    her unpaid overtime pay, liquidated damages, and an award of reasonable attorney's fees

    and cost pursuant to Section 3-427 of the Maryland Wage and Hour Law.


## FOURTH CLAIM FOR RELIEF
**(Maryland Wage Payment Law)**

53. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1

    through 52 herein.

54. Defendants employed Plaintiff within the meaning of the Maryland Wage and Hour Law,

    MD. CODE ANN., LAB. & EMP., § 3-501.

55. Defendants violated Sections 3-502, 3-504, and 3-505 of the Maryland Wage Payment

    Law by failing to pay Plaintiff at bi-weekly intervals, provide Plaintiff with appropriate

    and required notices of gross pay and deductions, and pay all compensation due to

    Plaintiff.

56. Defendants' failure to pay Plaintiff at bi-weekly intervals, provide Plaintiff with appropriate and required notices of gross pay and deductions, and pay all compensation due to Plaintiff, as required by Sections 3-502, 3-504, and 3-505 of the Maryland Wage Payment Law, entitles Plaintiff to recover liquidated damages and an award of reasonable attorney's fees and cost pursuant to Section 3-427 of the Maryland Wage and Hour Law.

## FIFTH CLAIM FOR RELIEF
### (Fraud)

57. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 56 herein.

58. On or about October 2012, Defendants induced Plaintiff to work for them as a domestic servant, by representing to Plaintiff that they would pay for Plaintiff to return to her homeland, Indonesia, after two years of employment in Defendants' home.

59. Upon information and belief, at the time Defendants made the foregoing representation to Plaintiff, they had no intention of complying with the representation.

60. Plaintiff relied on Defendants' misrepresentation by agreeing to work in Defendants' home as a domestic servant, and Plaintiff would not have undertaken employment for Defendants otherwise.

61. Plaintiff worked as a domestic servant in Defendants' home for seven years.  She was not provided a plane ticket to Indonesia following two years of employment, as Defendants represented upon employment.

62. Defendants fraudulently induced Plaintiff into employment by intentionally misrepresenting the terms of such employment.  Plaintiff is entitled to recover compensatory damages under Maryland Law.

63. Moreover, this act was malicious, fraudulent, and oppressive, justifying an award of

punitive damages so that Defendants will not engage in such conduct in the future.

Plaintiff is entitled to recover punitive damages under Maryland Law.

### SIXTH CLAIM FOR RELIEF
### (Breach of Contract)

64. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1

through 63 herein.

65. On or about October 2012, Defendants made an oral employment contract to pay for

Plaintiff to return to her homeland, Indonesia, after two years of employment in

Defendants' home.

66. Plaintiff performed all the conditions, covenants, and promises required under the terms

of the oral contract by working as a domestic servant in Defendants' home for seven

years.

67. Defendants breached the contract by not providing Plaintiff with a plane ticket to

Indonesia following two years of employment.

68. Upon information and belief, at the time Defendants made the foregoing promise to

Plaintiff, they had no intention of complying with the representation.

69. Defendants, therefore, have breached the oral contract of employment with Plaintiff by

failing to provide Plaintiff with a plane ticket to Indonesia following two years of

employment.  Plaintiff is entitled to compensatory damages in the sum of a plane ticket to

Indonesia.

70. Moreover, this act was malicious, fraudulent, and oppressive, justifying an award of

punitive damages so that Defendants will not engage in such conduct in the future.

Plaintiff is entitled to recover punitive damages under Maryland Law.


## SEVENTH CLAIM FOR RELIEF
### (Unjust Enrichment)

71.  Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1

through 70 herein

72.  Plaintiff worked as a domestic servant in Defendants' home for seven years.  During this

time, Defendants received good and valuable service, in the form of a full-time

housecleaner, nanny, and cook.

73. Plaintiff worked a minimum of 60 hours a week throughout her employment.  She was

paid a grossly substandard rate that was significantly less than minimum wage and did

not included overtime compensation.

74. As a result of the above conduct, Defendants have been unjustly enriched at the expense

of Plaintiff.

75. Defendants should be required to disgorge all gains which they obtained at the expense of

Plaintiff.  Plaintiff is entitled to receive the disgorgement of Defendants' unjust gains as

compensatory damages.


## EIGHTH CLAIM FOR RELIEF
### (Involuntary Servitude)

76. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1

through 75 herein.

77. Plaintiff is permitted to bring a civil cause of action under 18 U.S.C. § 1595.

78. While Plaintiff was seeking help and refuge from the Indonesian Embassy, Defendant
    Prakoso, an employee at the Indonesian Embassy, coercively took Plaintiff into his home
    under false pretenses.

79. Defendants knowingly obtained Plaintiff's forced and coerced labor through a scheme,
    plan, pattern, and practice of psychological abuse, enforced isolation, and threats of
    serious harm.

80. Defendants confiscated, concealed, and possessed Plaintiff's passport, in order to prevent
    or restrict Plaintiff's liberty to move or travel for the purpose of holding her in
    involuntary servitude and subjecting her to forced labor, in violation of U.S.C. § 1592.

81. Defendants isolated Plaintiff and prevented her from communicating with those who
    might be able to help her and understand her situation and manipulated her into believing
    that she could be harmed if she attempted to leave their home.  Plaintiff was highly
    vulnerable to Defendants, given that she did not speak English, had no family or friends
    in the United States, and had no money of her own.

82. Defendants held Plaintiff in involuntary servitude in the United States for seven years,
    forcing her to work extremely long hours against her will and without paying her required
    wages for her services.

83. As a direct and proximate result of Defendants' actions, Plaintiff has suffered severe
    emotional distress and economic loss.

84. Defendants' conduct created and perpetuated a system of involuntary servitude, and led
    Plaintiff to reasonably believe she could not avoid this servitude, in violation of both the
    Thirteenth Amendment to the United States Constitution and 18 U.S.C. § 1584.

85. Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

### NINTH CLAIM FOR RELIEF
### (Trafficking Victims Protection Act)

86. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 85 herein.

87. Plaintiff is permitted to bring a civil cause of action under 18 U.S.C. § 1595.

88. On or about August 2012, Plaintiff sought aid from Defendant Prakoso, an employee at the Indonesian embassy, to obtain her belongings and unpaid wages from a former employer. Plaintiff was originally trafficked into the United States by her former employer.

89. Defendants unlawfully re-trafficked Plaintiff, by coercively bringing her to their home and requiring her to work as a domestic servant, in violation of 18 U.S.C. § 1590.

90. Defendants confiscated, concealed, and possessed Plaintiff's passport in order to force her to work, in violation of 18 U.S.C. § 1592.

91. As incorporated above, Defendants kept Plaintiff in a condition of involuntary servitude through isolation and physiological coercion. Defendants prevented Plaintiff from communicating with those who might be able to help her, psychologically abused her, denied her compensation, and manipulated her into believing that she could be harmed if she attempted to escape.

92. Defendants unlawfully trafficked Plaintiff with respect to involuntary servitude by coercively harboring and transporting Plaintiff to work in their home under oppressive conditions, in violation of 18 U.S.C. § 1590.

93. Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter an order, jointly and severally against Defendants on Counts I-IX:

(1)     Granting judgment in favor of Plaintiff against Defendants for nonpayment of minimum wagse under Count I and awarding Plaintiff her unpaid minimum wages and an equal amount in liquidated damages as authorized by 29 U.S.C. § 216;

(2)     Granting judgment in favor of Plaintiff against Defendants for nonpayment of minimum wages and overtime compensation due under Counts II, III, and VI, and awarding Plaintiff three times those unpaid wages as authorized by § 3-507.1(b) of the Maryland Wage Payment Law;

(4)     Granting judgment in favor of Plaintiff against Defendants for fraud, breach of contract, and unjust enrichment under Counts V and VI, and awarding Plaintiff the cost of a plane ticket to Indonesia and punitive damages as authorized by Maryland law;

(5)     Granting judgment in favor of Plaintiff against Defendants for holding her in involuntary servitude and trafficking her against her will, and awarding her actual, special, and punitive damages under Count VIII and IX.

(7)     Granting Plaintiff emotional distress damages for her fraud, involuntary servitude, and human trafficking claims.

(8)     Awarding Plaintiff the costs of this action.

(9)     Awarding counsel reasonable attorneys' fees.

(10)    Granting such further relief as this Court deems just and equitable.

16

## DEMAND FOR JURY TRIAL

WHEREFORE Plaintiff demands a trial by jury on all counts contained herein

Respectfully submitted,

Dated: October 2, 2014                     By: _____

Trina Fairley Barlow (Federal Bar # 15230)
Glenn Grant
Rose M. Plato
Crowell & Moring
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595
(v) 202-624-2852
(f) 202-628-5116 [17]
tbarlow@crowell.com
ggrant@crowell.com
rplato@crowell.com

*Attorneys for Plaintiff*